ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL IV**

| | | |
|---|---|---|
| **GEORGE L. JIMÉNEZ RODRÍGUEZ**<br>DEMANDANTE(S)-RECURRIDA(S)<br><br>V.<br><br>**PAN PEPÍN, INC.**<br>DEMANDADA(S)-PETICIONARIA(S) | **KLCE202401129** | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de **OROCOVIS**<br><br>Caso Núm.<br>**OR2023CV00117**<br><br>Sobre:<br>Despido Injustificado, Procedimiento Sumario |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente

### R E S O L U C I Ó N

En San Juan, Puerto Rico, hoy día 6 de marzo de 2025.

Comparece ante este Tribunal de Apelaciones, **PAN PEPÍN, INC.** (**PAN PEPÍN**) mediante una *Petición de Certiorari* instada el 18 de octubre de 2024. En su recurso, nos solicita que revisemos la *Resolución* decretada el 7 de octubre de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de Orocovis.[1] Por medio de la aludida decisión, el foro primario declaró no ha lugar la solicitud de sentencia sumaria presentada el 24 de enero de 2024 por **PAN PEPÍN**; ordenó la continuación de los procedimientos y pautó conferencia con antelación al juicio, mediante videoconferencia, para el 12 de noviembre de 2024.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

### - I -

El 22 de junio de 2023, el señor **GEORGE L. JIMÉNEZ RODRÍGUEZ** (señor **JIMÉNEZ RODRÍGUEZ**) interpuso una *Querella* sobre despido injustificado al

---

[1] Dicho dictamen judicial fue notificado y archivado en autos el 8 de octubre de 2024. Apéndice de la *Petición de Certiorari*, págs. 1- 13.

amparo de la Ley Núm. 80- 1976, según enmendada; y Ley Núm. 2- 1961, según enmendada (procedimiento sumario), en contra de **PAN PEPÍN**.[2] Expuso que comenzó a trabajar para **PAN PEPÍN** el 19 de diciembre de 2010, como *Asociado de Almacén,* y no había sido objeto de disciplina progresiva de manera verbal ni por escrito. Concretó que el 27 de abril de 2023, fue despedido sin justa causa, de manera caprichosa e ilegal en violación a la Ley Núm. 80, *supra*. Ante ello, solicitó una mesada de $15,768.00 más $3,942.00 en concepto de honorarios de abogado.

Posteriormente, el 10 de julio de 2023, **PAN PEPÍN** presentó su *Contestación a Querella*.[3] En síntesis, negó la mayoría de las alegaciones contenidas en la *Querella* y replicó, entre otras cosas, que la compensación del señor **JIMÉNEZ RODRÍGUEZ** era de $10.95 por hora. Añadió que éste último sí fue objeto de acciones disciplinarias; amonestado por escrito luego de haberse investigado; y confirmada información recibida por la compañía, en la cual alertaron a **PAN PEPÍN** que éste formaba parte del registro de ofensores sexuales del estado de la Florida. Puntualizó que **PAN PEPÍN** tomó la determinación de separar al señor **JIMÉNEZ RODRÍGUEZ** permanentemente de su empleo, mediando justa causa para ello, luego de que éste amenazara con agredir físicamente a un compañero de trabajo y lo invitara a "pelear" por razones vinculadas al empleo, durante hora laborables.

Luego de varios incidentes procesales, el 24 de enero de 2024, **PAN PEPÍN** presentó una *Moción de Sentencia Sumaria*.[4] En términos generales,

---

[2] Apéndice de la *Petición de Certiorari*, págs. 14- 15. Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como *Ley de Indemnización por Despido Sin Justa Causa*. 29 LPRA §185 (a). Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como *Ley de Procedimiento Sumario de Reclamaciones Laborales*. 32 LPRA § 3118.

[3] Apéndice de la *Petición de Certiorari*, págs. 16- 20.

[4] *Íd.*, págs. 21- 159. Dicho petitorio tiene anejado la siguiente documentación: (a) la deposición tomada el 29 de noviembre de 2023 al señor **JIMÉNEZ RODRÍGUEZ**; (b) una *Declaración Jurada* suscrita el 24 de enero de 2024 por la señora Elena Vidal Del Valle, Directora del Departamento de Recursos Humanos; (c) el *Nombramiento Probatorio* fechado 17 de diciembre de 2010 del señor **JIMÉNEZ RODRÍGUEZ**; (d) una amonestación (Conflictos y Conducta Impropia) de 22 de agosto de 2012 por discusiones con su compañero de trabajo al señor **JIMÉNEZ RODRÍGUEZ**; (e) otra amonestación de 3 de junio de 2021 por uso indebido de una montacarga al señor **JIMÉNEZ RODRÍGUEZ**; (f) unas notas sobre investigación referente al incidente de 21 de abril de 2023 de la señora Elena Vidal Del Valle; (g) una *Declaración Jurada* firmada el 24 de enero de 2024 por el señor José González Arce, empleado con quien el señor **JIMÉNEZ RODRÍGUEZ** tuvo el altercado; (h) una *Declaración Jurada* rubricada el 24 de enero de 2024 signada por el señor Elvin Omar Escobar Jiménez, quien fuera el supervisor durante el incidente; (i) una *Declaración Jurada* con fecha de 24 de enero de 2024 infrascrita por el

propuso cincuenta y tres (53) hechos materiales que no están en controversia. Planteó que, basado en las propias admisiones del señor **JIMÉNEZ RODRÍGUEZ** durante su deposición, así como la prueba documental admisible que surgía del expediente, no existía el más leve asomo fáctico ni jurídico que permitiera concluir que tiene a su haber una causa de acción. Reiteró que el señor **JIMÉNEZ RODRÍGUEZ** admitió bajo juramento haber recibido amonestaciones y apercibimientos por roces y discusiones con otros empleados. Enfatizó que la investigación realizada por el Departamento de Recursos Humanos de **PAN PEPÍN** concluyó que: (1) el señor **JIMÉNEZ RODRÍGUEZ**, en violación a las políticas de la empresa invitó al señor José González (señor González) a resolver su problema "cuando llegue a su casa"; (2) intimidó y amenazó al señor González; y (3) constantemente tenía problemas y discusiones con sus compañeros del área de almacén y causaba un ambiente hostil en el lugar de trabajo.

Al día siguiente, el 25 de enero de 2024, **PAN PEPÍN** presentó una *Moción Aclaratoria en Torno a la Moción de Sentencia Sumaria* en la cual corrigió los hechos propuestos 11, 17, 18 y 25 de la *Moción de Sentencia Sumaria*.[5] Así las cosas, ese mismo día, se expidió *Orden* concediendo un término de veinte (20) días para presentar su oposición al señor **JIMÉNEZ RODRÍGUEZ**.[6] El 26 de enero de 2024, el foro de instancia, mediante *Orden*, permitió las enmiendas presentadas.[7]

Después, el 19 de marzo de 2024, **PAN PEPÍN** presentó una *Moción para que se dé por Sometida Sin Oposición la Moción de Sentencia Sumaria*.[8] En ella, explicó que el término para presentar la oposición había vencido el 15 de febrero de 2024; por lo que, correspondía dictar sentencia sumaria desestimando la *Querella*. En consecuencia, el 9 de abril de 2024, el señor

---

señor Carmelo Merced Rodríguez, quien fuera entrevistado por motivo del incidente; (j) el perfil en el Registro de Ofensores Sexuales de Florida, Estados Unidos del señor **JIMÉNEZ RODRÍGUEZ**; y (k) las *Normas Generales de Conducta en el Trabajo* de Pan Pepín.
[5] Apéndice de la *Petición de Certiorari*, págs. 160- 161.
[6] *Íd.*, pág. 162.
[7] *Íd.*, pág. 163.
[8] *Íd.*, págs. 164- 165.

**JIMÉNEZ RODRÍGUEZ** presentó *Moción Solicitando 5 Días para Presentar Oposición a Moción de Sentencia Sumaria*.[9]

A los pocos días, el 15 de abril de 2024, el señor **JIMÉNEZ RODRÍGUEZ** presentó su *Oposición a Moción de Sentencia Sumaria*.[10] De forma específica, consignó treinta y seis (36) hechos que no estaban en controversia, y dieciséis (16) que, a su consideración, sí estaban en controversia. Sustentó que existen numerosas controversias sustanciales de hecho que impedían resolver el caso por la vía sumaria, por lo que solicitó ser oído en un juicio en su fondo. En particular, si hubo o no amenaza de su parte hacia el señor González, o si fue éste quien lo amenazó.

El 18 de abril de 2024, se dictaminó *Orden* denegando que se diera por sometido sin oposición el petitorio de sentencia sumaria presentada por **PAN PEPÍN**.[11] Por ende, el 7 de mayo de 2024, **PAN PEPÍN** presentó una *Réplica a la Oposición del Querellante a la Moción de Sentencia Sumaria Presentada por Pan Pepín* en la cual alegó el incumplimiento con la Regla 36.3 de las de Procedimiento Civil de 2009 en la oposición a la solicitud de sentencia sumaria, toda vez que contenía reclamaciones nuevas nunca antes aducidas en las alegaciones que constan ante el tribunal.[12]

Meses después, el 7 de octubre de 2024, el tribunal de instancia intimó la *Resolución* impugnada conteniendo los hechos materiales que no están en controversia:[13]

1. Jiménez comenzó a trabajar para Pan Pepín el 19 de diciembre de 2010.
2. Durante el tiempo pertinente a su reclamación, el querellante trabajó como Asociado de Almacén.
3. Mientras trabajó en el departamento de almacén, el querellante fue supervisado por el Sr. Rubén Rodríguez, el Sr. Félix Santiago y el Sr. Elvin Escobar.
4. Al momento de su despido, el supervisor del querellante era el Sr. Elvin Escobar.

---

[9] Apéndice de la *Petición de Certiorari*, págs. 166- 167.
[10] *Íd.*, págs. 168- 190. Esta oposición está acompañada de lo siguiente: *Declaración Jurada* suscrita el 18 de abril de 2024 por el señor **JIMÉNEZ RODRÍGUEZ**.
[11] Apéndice de la *Petición de Certiorari*, pág. 191.
[12] *Íd.*, págs. 192- 203.
[13] Este dictamen acogió cuarenta y nueve (49) de los hechos incontrovertidos propuestos por **PAN PEPÍN**; y dispuso cuatro (4) como hechos en controversia.

5. El querellante reconoce que tanto este como sus compañeros del departamento debían acatar las instrucciones de su supervisor[.]

6. Elena Vidal era la directora de Recursos Humanos al momento del despido del querellante.

7. Al iniciar su empleo con Pan Pepín, el querellante recibió las *Normas Generales de Conducta en el Trabajo* (Manual del Empleado).

8. Pan Pepín tiene implementadas normas, políticas y reglas razonables para el debido funcionamiento de las operaciones y las mismas se les entregan de forma oportuna y adecuada a sus empleados en aras de que tengan pleno conocimiento sobre las normas que rigen a la empresa.

9. El querellante reconoció en su deposición que en el formulario de solicitud de empleo entregado por Pan Pepín se le preguntó si había sido convicto por haber cometido algún delito y que respondió que "no", aun cuando conocía que fue convicto por un delito de actos lascivos a un(a) menor víctima de entre 12-15 años de edad que cometió en los Estados Unidos.

10. El querellante reconoce que no fue sincero en su solicitud de empleo.

11. Como consecuencia de tal convicción, el querellante pertenece al Registro de ofensores sexuales del estado de la Florida.

12. Luego de haberse investigado y confirmado que el querellante formaba parte del registro de ofensores sexuales del estado de la Florida, lo que fue omitido por el Sr. Jiménez en su solicitud de empleo, el querellante le admitió a Pan Pepín tal suceso en una reunión llevada [a] cabo en la compañía años después de este haber comenzado su empleo en Pan Pepín.

13. A pesar de la gravedad de su falta, la empresa tomó la decisión de no despedirlo en ese momento, y en cambio, decidió darle una oportunidad.

14. El querellante admitió en su deposición que tuvo roces y discusiones con otro empleado, llamado Pedro Soto, quien, por un periodo de tiempo, también trabajó en el departamento de almacén de Pan Pepín.

15. Al referirse a Pedro Soto, el querellante testificó lo siguiente en su deposición: "Nosotros siempre tuvimos algo, sí. No le voy a mentir. Como empleados en Bayamón a 90 grados de que te gire la cabeza, uno siempre tenía discusiones, pero nunca con desafío de pelear, nada. Y nada, ya al otro día estábamos como si nada. Eran roces de momento."

16. El 22 de agosto de 2012, el querellante recibió una amonestación debido a sus discusiones con Pedro Soto. El querellante firmó dicha amonestación.

17. Conforme a la amonestación, y según admitido por el querellante, entre éste y Pedro Soto ocurrieron varios incidentes de discusión.

18. Conforme a la amonestación y según admitido por el querellante, Félix Santiago lo apercibió de que, si continuaban dichos incidentes, el querellante podría estar expuesto a medidas disciplinarias más severas como suspensión y despido.

19. Además, según admitido por el querellante, por medio de la amonestación se le notificó a éste que dichos incidentes violentaban las reglas del Manual del Empleado.

20. El querellante reconoce que cuando comenzó su empleo con Pan Pepín, recibió y leyó el Manual del Empleado.

21. El querellante reconoce que el Manual del Empleado prohíbe situaciones y conductas impropias entre empleados en el lugar de empleo.

22. El querellante reconoce que el Manual del Empleado prohíbe las amenazas en el lugar de empleo.

23. El querellante admitió bajo juramento que las situaciones que tuvo con Pedro Soto violaban el Manual del Empleado.

24. Velando por la seguridad de sus empleados y por el buen funcionamiento de la empresa, Pan Pepín optó por transferir a Pedro Soto a otra posición y, en consecuencia, en separar a ambos empleados.

25. El 11 de junio de 2021, al querellante se le llamó la atención y fue apercibido por escrito por el uso indebido del montacargas en el lugar del empleo.

26. Está en controversia

27. Esta en controversia.

28. El Sr. González, luego de culminado el incidente, inmediatamente presentó una queja ante el Departamento de Recursos Humanos, pues se sintió intimidado ante las expresiones del querellante y temió por su seguridad en el empleo y fuera del mismo.

29. Tras escuchar estas expresiones, el Sr. González se sintió amenazado de ser agredido físicamente por el querellante.

30. El Sr. González, previo al incidente, nunca tuvo problemas con otros empleados.

31. El querellante reconoce y admite bajo juramento que siempre tuvo problemas con Pedro Soto y José González.

32. Luego de culminado el incidente, el querellante se dirigió a donde su supervisor, el Sr. Elvin Escobar.

33. El querellante estaba molesto y alterado cuando le comunicó lo sucedió al Sr. Escobar.

34. El querellante le admitió al Sr. Escobar, en un tono violento, que invitó al Sr. González a resolver el problema fuera del lugar de empleo.

35. Al escuchar dichas expresiones, el Sr. Escobar temió por la seguridad del Sr. González y refirió el asunto al Departamento de Recursos Humanos para que procediera con una investigación de los hechos.

36. El querellante nunca presentó una queja en contra de José González ante Recursos Humanos.

37. El día del incidente, el querellante le admitió al Sr. Carmelo Merced Rodríguez, otro empleado del área de almacén, que invitó al Sr. González a resolver las cosas fuera del lugar de empleo.

38. El Sr. Merced notó que dichas expresiones fueron en tono amenazante y que el querellante estaba alterado.

39. El Sr. Merced declaró bajo juramento que presenció discusiones entre George Jiménez y otros empleados y que el querellante causaba un ambiente hostil de trabajo.

40. Este incidente provocó que Pan Pepín iniciara una investigación inmediata en donde entrevistó a ambas partes para que ofrecieran su versión de los hechos. Asimismo, se entrevistaron a otros empleados del área de almacén y se evaluó con rigor un vídeo sobre el incidente.

41. La Sra. Vidal y el Sr. Escudero escucharon la versión del querellante sobre lo ocurrido el 21 de abril de 2023, dentro de los predios de Pan Pepín.

42. Según se desprende de la investigación y de las entrevistas realizadas a los empleados involucrados, el querellante le manifestó a José González lo siguiente "Vamos, me llamas cuando llegues a tu casa y resolvemos el problema".

43. Esta en controversia.

44. Esta en controversia.

45. El querellante declaró en su deposición lo siguiente: "[l]as discusiones eso era lo más que se podía ver allí en el almacén y eso se veía no todo el tiempo. Eso eran cosas del trabajo."

46. Del expediente personal del Sr. González no surgen amonestaciones por violaciones a las políticas de Pan Pepín.

47. La Regla 20 del Manual del Empleado de Pan Pepín establece lo siguiente:

> No se permitirá ningún tipo de conducta ofensiva a la decencia y a la moral. Igualmente, no se permitirá el que los asociados incurran en actos amenazantes, riñas, peleas, actos indecentes o inmorales, agresión(es) o provocación(es) por cualquier motivo, dentro de la Compañía o en sus inmediaciones o en cualquier lugar, si el motivo surge por razones vinculadas al empleo o en el empleo. Esta falta conllevará el despido inmediato. Los juegos de manos, conducta agresiva, peleas o fomentar el desorden en los predios de la empresa está estrictamente prohibidos. No se permitirá el uso de lenguaje obsceno, ofensivo, abusivo, gestos obscenos o amenazantes, ni hacer comentarios viciosos o maliciosos acerca de otro asociado, supervisor o cliente.
>
> Se prohíbe todo tipo de discusión los compañeros, supervisores y clientes. Cualquier problema que surja con un cliente, supervisor o compañero de trabajo, deberá ser referido a su supervisor o algún personal gerencial autorizado. La decisión que tome el supervisor deberá ser aceptada de inmediato por el asociado. Si luego de acatar la orden, el asociado decide cuestionar la misma, deberá hacerlo siguiendo el procedimiento de quejas y problemas personales establecido en el inciso "Y".
>
> Tampoco se tolerará la falta de respeto a los supervisores, jefes, clientes, visitantes o a otros compañeros de trabajo.

48. La Regla 21 del Manual del Empleado establece lo siguiente:

> Las amenazas, intimidación o la interferencia con otros asociados, supervisores o jefes con terceras

personas están terminantemente prohibidas. La atmósfera de trabajo debe ser una cordial y de compañerismo.

Los asociados deben resolver los desacuerdos o conflictos que puedan surgir relacionados a su trabajo o por otras causas, observando siempre una conducta respetuosa y evitando provocaciones, peleas o alteraciones a la paz.

49. El querellante admitió en su deposición que conocía la Regla 20 del Manual del Empleado.

50. El querellante admitió en su deposición que conocía la Regla 21 del Manual del Empleado.

51. El querellante reconoce que en Pan Pepín se prohíben actos de amenazas, provocaciones y agresiones y que cometer dichas faltas, conllevaría el despido inmediato.

52. El querellante reconoce que la atmósfera de trabajo de Pan Pepín debe ser una cordial y de compañerismo.

53. El querellante fue despedido el 27 de abril de 2023, luego de haberse concluido la investigación conducida por el Departamento de Recursos Humanos y luego de que Pan Pepín evaluara el historial de empleo del querellante.

Por otra parte, formuló los hechos materiales que sí están en controversia:

26. El 21 de abril de 2023, durante horas laborables y en el lugar de empleo, el querellante discutió con otro empleado del área de almacén, el Sr. José González.

27. A consecuencia de dicha discusión, los ánimos se caldearon. A esos efectos, en un tono violento, el querellante invitó al Sr. González a resolver el problema fuera del lugar de empleo.

43. No surge de la investigación realizada por el Departamento de Recursos Humanos, que el querellante haya indicado que fue el Sr. González quien alegadamente lo invitó [a] "pelear".

44. La exhaustiva investigación efectuada por Pan Pepín reflejó que: (1) el querellante en violación a las políticas de la empresa invitó al Sr. González a resolver su problema fuera del lugar de empleo y (2) que el querellante en violación a las políticas de la empresa intimidó y amenazó al Sr. González.

Cónsono con lo anterior, dedujo que aún existen controversias de hechos materiales y declaró no ha lugar la *Moción de Sentencia Sumaria* presentada el 24 de enero de 2024 por **PAN PEPÍN**. Opinó que se trata de un asunto de credibilidad que era necesario dilucidar en un juicio plenario.

En desacuerdo, el 18 de octubre de 2024, **PAN PEPÍN** recurrió ante este Tribunal de Apelaciones señalando los siguientes errores:

Erró el Tribunal de Primera Instancia al - con los hechos que determinó como incontrovertidos - negarse a emitir Sentencia Sumaria a favor de Pan Pepín cuando la prueba demuestra que el recurrido incurrió en la práctica intolerable de amenazar e intimidar a su compañero de trabajo, evento que justificó su despido.

> Erró el Tribunal de Primera Instancia al determinar que existen cuatro controversias de hechos que ameritan la dilucidación mediante juicio plenario cuando los hechos medulares en este caso son claros y cuando a la luz de ellos se [justifica] el despido del recurrido.

El 24 de octubre de 2024, pronunciamos *Resolución* en la cual, entre otras cosas, concedimos un término de diez (10) días para mostrar causa por la cual no debemos expedir el auto de *certiorari* y revocar el dictamen impugnado al señor **Jiménez Rodríguez**. En consecuencia, el 31 de octubre de 2024, el señor **Jiménez Rodríguez** presentó su *Oposición a Expedición de Certiorari*.

Evaluado concienzudamente el expediente del caso, habiéndole dado la debida consideración a la transcripción de la prueba oral (TPO) y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

### - II –

### - A - *Certiorari*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias decretadas por una corte de inferior instancia judicial.[14] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[15]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[16] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[17]

---

[14] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).

[15] *Íd.*

[16] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).

[17] *Íd.*

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[18] La aludida Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[19] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1) se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2) en asuntos relacionados a privilegios evidenciarios;
> (3) en casos de anotaciones de rebeldía;
> (4) en casos de relaciones de familia;
> (5) en casos revestidos de interés público; o
> (6) en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[20]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar un dictamen del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos requiere tomar en consideración, además, los criterios dispuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones.[21]

Por otro lado, el examen de los [recursos] discrecionales no se da en el vacío o en ausencia de otros parámetros.[22] Para ello, la Regla 40 de nuestro Reglamento instituye los indicadores a considerar al evaluar si se debe o no expedir un recurso de *certiorari*. A saber:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;

---

[18] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra*.
[19] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).
[20] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).
[21] *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG, supra*.
[22] *Íd.*

(D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[23]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva, y ninguno de estos criterios es determinante, por sí solo, para justificar el ejercicio de nuestra jurisdicción.[24] En otras palabras, los anteriores criterios nos sirven de guía para poder determinar de la forma más sabia y prudente si se justifica nuestra intervención en la etapa del procedimiento en que se encuentra el caso.[25] Ello, pues distinto al recurso de apelación, este Tribunal posee discreción para expedir el auto de *certiorari*.[26] La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación."[27]

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[28] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[29]

### - B - *PROCEDIMIENTO SUMARIO DE RELACIONES LABORALES*

La Ley Núm. 2 de 17 de octubre de 1961, según enmendada, fue promulgada como un mecanismo procesal, de naturaleza sumaria, cuyo

---

[23] 4 LPRA Ap. XXII-B, R. 40; *Torres González v. Zaragoza Meléndez, supra*; *Rivera Figueroa v. Joe´s European Shop*, 183 DPR 580 (2011).

[24] *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005).

[25] *Mun. Caguas v. JRO Construction, Inc.*, 201 DPR 703, 712 (2019).

[26] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).

[27] *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486– 487 (2019); *Mun. Caguas v. JRO Construction Inc.*, *supra*.

[28] *García v. Asociación*, 165 DPR 311, 322 (2005).

[29] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

objetivo es lograr la rápida consideración y adjudicación de las reclamaciones laborales por empleados en contra de sus patronos.[30] En esa dirección, sabido es que las reclamaciones laborales ameritan ser resueltas con celeridad de forma tal que se pueda implantar la política pública del Estado, de proteger los empleos, desalentar el despido sin justa causa y proveer al obrero que resulte despedido los medios económicos para su subsistencia mientras consigue un nuevo empleo.[31]

Al mencionar lo anterior, es menester exponer que, con la finalidad de continuar promoviendo el carácter sumario de la ley, la Asamblea Legislativa aprobó la Ley Núm. 133-2014 en la cual manifestó su intención de extender el carácter sumario del estatuto a la etapa apelativa para cumplir con el propósito rector de la misma, de proveer al obrero un remedio rápido y eficaz.[32] En armonía con lo antes expuesto, nuestro Máximo Foro ha resuelto que la revisión de resoluciones interlocutorias es contrario al carácter sumario que, precisamente, busca adelantar el procedimiento. En virtud de ello, los tribunales revisores debemos autolimitar nuestra facultad al efecto.[33]

En ese sentido, la parte que pretenda impugnar las resoluciones interlocutorias deberá esperar hasta la sentencia final e instar contra ella el recurso pertinente a base del alegado error cometido.[34] Asimismo, el Tribunal Supremo ha reconocido que lo anterior no sería absoluto, y, por tanto, cedería en aquellos casos en que alguna resolución sea dictada sin jurisdicción por el Tribunal de Primera Instancia o en aquellos casos extremos en los cuales los fines de la justicia requieran la intervención del foro apelativo.[35]

De este modo, a manera de excepción, los tribunales apelativos deben mantener y ejercer su facultad para revisar mediante *certiorari* aquellas

---

[30] Conocida como la *Ley de Procedimiento Sumario de Relaciones Laborales,* 32 LPRA § 3118. Véase también *Patino Chirino v. Parador Villa Antonio*, 196 DPR 439, 446 (2016).
[31] *Ruíz Camilo v. Trafon Group, Inc*., 200 DPR 254, 265 (2018).
[32] Véase Exposición de Motivos, Ley Núm. 133-2014. *Patino Chirino v. Parador Villa Antonio, supra*, págs. 446– 447.
[33] *Dávila, Rivera v. Antilles Shipping, Inc.*, 147 DPR 483, 496 (1999).
[34] *Íd.*, pág. 497.
[35] *Medina Nazario v. McNeil Healthcare, supra*, pág. 730.

resoluciones interlocutorias dictadas en un procedimiento sumario a tenor con la Ley Núm. 2-1961, en aquellos casos extremos en que la revisión inmediata, disponga del caso en forma definitiva o cuando dicha revisión inmediata tenga el efecto de evitar una grave injusticia.[36] Es decir, como excepción, los foros revisores deben mantener y ejercer su facultad revisora mediante *certiorari* solo en aquellas resoluciones interlocutorias dictadas en un procedimiento sumario (querellas laborales), en las siguientes instancias: **(1) cuando el tribunal primario haya actuado sin jurisdicción; (2) en situaciones en las que la revisión inmediata dispone del caso por completo; o (3) cuando la revisión tenga el efecto de evitar una grave injusticia.**[37]

- III -

En su escrito, **PAN PEPÍN** sustancialmente punteó que el tribunal de instancia se equivocó al no resolver sumariamente este caso, en el cual a todas luces surge que el patrono tomó la decisión correcta y de manera responsable despidió al señor **JIMÉNEZ RODRÍGUEZ**. Justificó sus argumentos en el hecho de que, además de haberse cometido el incidente protagonizado por el señor **JIMÉNEZ RODRÍGUEZ** en contra del señor González, su compañero, razonablemente se puede concluir que las expresiones vociferadas en el lugar de trabajo fueron violentas, amenazantes e intimidantes. Afirmó que el Departamento de Recursos Humanos de **PAN PEPÍN** realizó una investigación completa en la cual entrevistó a varios empleados. Apuntaló que el foro de instancia incidió en su apreciación de prueba al denegar resolver el pleito sumariamente, obligándolo así a incurrir en gastos innecesarios de un juicio.

Por su parte, el señor **JIMÉNEZ RODRÍGUEZ**, concluyó que **PAN PEPÍN**, a sabiendas de que ostensiblemente existen hechos sustanciales en controversia, presentó un recurso con frivolidad con el único objetivo de obstaculizar y demorar los procedimientos del caso, siendo un caso de

---

[36] *Íd.*

[37] *Díaz Santiago v. PUCPR et al.*, 207 DPR 339, 349 (2021) (énfasis nuestro).

carácter sumario bajo la Ley Núm. 2, *supra*. Planteó que sería un fracaso a la justicia el que no se permitiera el juicio en su fondo para exponer las razones por las cuales su despido fue injustificado luego de trece (13) años de empleo.

En asuntos de naturaleza interlocutoria, en casos de índole laboral sumario, discernimos que no se configuran los elementos instituidos jurisprudencialmente por nuestro Tribunal Supremo, que autoricen nuestra intervención en un procedimiento sumario al amparo de la Ley Núm. 2.

Consideramos que no estamos ante un escenario en el que el foro primario haya actuado sin jurisdicción sobre el asunto o se configure un caso extremo que exija nuestra intervención. Tampoco, nos parece que la decisión recurrida sea contraria a derecho, ni que en esta haya mediado prejuicio, parcialidad o abuso de discreción. Asimismo, no entendemos que la expedición del auto evite el fracaso de la justicia. En conclusión, nada en el expediente nos convenció para utilizar nuestra función revisora en esta etapa de los procedimientos.

- IV -

Por los fundamentos antes expuestos y en consideración a que estamos ante una resolución interlocutoria dentro de una causa de acción al amparo de la *Ley de Procedimiento Sumario de Relaciones Laborales*, según enmendada, **denegamos** la expedición del auto de *certiorari* entablado el 18 de octubre de 2024 por **PAN PEPÍN**.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

La Jueza Rivera Marchand disiente sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones